UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HARPSWELL COASTAL ACADEMY et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00454-JAW |
| | ) | |
| MAINE SCHOOL ADMINISTRATIVE | ) | |
| DISTRICT NO 75 (TOPSHAM), | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Concluding that substantial uncertainty exists over the meaning of a state law and that settling the state law question may well obviate the need to resolve a significant federal constitutional question, the Court dismisses the Plaintiffs' Complaint and motion for preliminary injunction without prejudice under *Pullman*[1] abstention principles to allow the parties to proceed in state court.

## I.  BACKGROUND

### A.  Procedural History and Parties' Arguments

On November 9, 2015, Harpswell Coastal Academy (HCA),[2] Wesley and Carrie Withers (the Withers),[3] and John Doe[4] initiated a lawsuit against Maine School

---

[1]  *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

[2]  HCA is a public charter school located in Harpswell, Maine, chartered under Chapter 112 of Title 20-A of the Maine Revised Statutes. *Compl.* ¶ 1.

[3]  Wesley and Carrie Withers are residents and taxpayers of Harpswell, Maine, residents of Maine School Administrative District (MSAD) 75, and parents of their minor son, John Doe. *Compl.* ¶ 2.

[4]  John Doe is a minor child and the son of Wesley and Carrie Withers. He is a student of HCA in the eighth grade and a resident of MSAD 75. *Compl.* ¶ 3.

Administrative District (MSAD) 75,[5] alleging violations of 42 U.S.C. § 1983 and 20-A M.R.S. § 2415.  *See Compl.* (ECF No. 1) (*Compl.*).  The Plaintiffs seek to enjoin MSAD 75 from enforcing the provisions of its recently adopted policy – "Charter School Students-Access to Public School Interscholastic and Extracurricular Activities" (JJIAAB Policy)[6] – that would prevent participation by John Doe on the Mt. Ararat eighth grade boys' basketball team, or that would exclude any other HCA students from extracurricular or interscholastic activities.  *Id.* at 9.  Plaintiffs also seek a declaratory judgment that the JJIAAB Policy violates 42 U.S.C. § 1983 and 20-A M.R.S. § 2415, that John Doe have the right to compete for a position on the Mt. Ararat eighth grade boys' basketball team, and the awarding of damages in the sum to be determined at trial.  *Id.*

On November 10, 2015, Plaintiffs filed a motion for a preliminary injunction under Federal Rule of Civil Procedure 65, seeking the Court to enjoin MSAD 75 pending trial and final determination of this case from enforcing the provisions of the JJIAAB Policy, or any related rules that would prevent participation by John Doe on the Mt. Ararat eighth grade boys' basketball team, or that would exclude any other HCA students from extracurricular or interscholastic activities.  *Pls.' Mot. for a Prelim. Inj.*, at 9-10 (ECF No. 5) (*Prelim. Inj.*).  Additionally, the motion requests that John Doe be granted the immediate right to compete for a position on the Mt. Ararat eighth grade boys' basketball team, and if MSAD 75 has already held a try-out for

---

[5]   MSAD 75 is a school administrative unit, and under 20-A M.R.S. § 1206, the official school for the communities of Bowdoin, Bowdoinham, Harpswell and Topsham, Maine.  *Compl.* ¶ 4.

[6]   *Compl.* Attach. 1 *Requirements for Participation in Extracurricular Activities* (ECF No. 1) (*JJIAAB Policy*).

the eighth grade boys' basketball team, MSAD be ordered to hold a new try-out so that John Doe may have the same opportunities as noncharter students. *Id.*

MSAD 75 filed an objection to the Plaintiffs' motion for a preliminary injunction on November 12, 2015. *Def.'s Obj. to Pls.' Mot. for a Prelim. Inj.* (ECF No. 14) (*Def.'s Obj.*). MSAD 75 argues that the Plaintiffs' motion for preliminary injunction should be denied for the main reason that they are unlikely to succeed on the merits, whether as a matter of federal equal protection principles or as a matter of state statutory interpretation. *Id.* at 9-10. Moreover, MSAD 75's objection suggests the Complaint is only "cloaked in constitutional garb" and questions whether federal jurisdiction and standing exists for the Court to consider the § 1983 claim. *Id.* at 3, 5-6.

On November 12, 2015, the Court held a hearing on the Plaintiffs' motion for preliminary injunction. (ECF No. 17). During the presentations, the Court questioned whether federal jurisdiction exists for a § 1983 claim founded on "differential treatment for students based solely on which public school they choose to attend . . .", and particularly their participation in interscholastic and extracurricular activities. *See Compl.* ¶ 42. At the hearing, the Court observed that if the § 1983 claim was not viable, the only remaining count would be a state law matter that would not provide a basis for federal jurisdiction.

Given the imminent announcement of the results of the Mt. Ararat eighth grade boys' basketball team try-outs, the parties agreed to brief the issue of jurisdiction on an expedited basis. Additionally, the parties informed the Court that

MSAD 75 agreed to hold off announcing the results of the basketball try-outs until 1:00 p.m. on Monday, November 16, 2015. *Letter from Att'y David W. Bertoni to Hon. John A. Woodcock, Jr.* (Nov. 13, 2015) (ECF No. 19). On November 13, 2015, the Plaintiffs filed a memorandum. *Suppl. Br. on Juris.* (ECF No. 20) (*Pls.' Suppl. Mem.*). On November 14, 2015, the Defendant filed a responsive memorandum. *Def.'s Suppl. Br. on Fed. Juris.* (ECF No. 21) (*Def.'s Suppl. Opp'n*).

### B.   Factual Background

#### 1.   Legislative Background

In 2011, the Maine Legislature passed LD 1553, which established a charter school program in Maine, codified at 20-A M.R.S. § 2401 *et seq. Compl.* ¶ 8. HCA applied for and received a charter contract with the Maine Charter School Commission in 2013, and opened that fall. *Id.* ¶ 9. Pursuant to 20-A M.R.S.A. § 2415(2), students at a charter school may participate in extracurricular and interscholastic activities in their home school district if the activity is not offered by the charter school. *Id.* ¶ 10. Under this statute, superintendents are permitted to deny charter students' applications if the charter school provides the same extracurricular activity or "if the noncharter public school does not have the capacity to provide the public charter school student with the opportunity to participate in the extracurricular or interscholastic activity."[7] *Id.* ¶ 11.

---

[7]   20-A M.R.S. § 2415(2) states in relevant part:

The superintendent of the school administrative unit or the superintendent's designee may withhold approval only if the public charter school the student attends provides the same extracurricular or interscholastic activity or if the noncharter public school does not have the capacity to provide the public charter school student with the opportunity to participate in the extracurricular or interscholastic activity.

## 2.   MSAD 75 Charter School Student Policy

MSAD 75 is charged with responsibility for the care, management, and control of all public school business within its jurisdiction, which includes administration of the athletic program at all of the schools within MSAD 75, including Mt. Ararat Middle School.  *Id.* ¶ 12.  On July 9, 2015, MSAD 75's school board adopted a policy titled "CHARTER SCHOOL STUDENTS—ACCESS TO PUBLIC SCHOOL INTERSCHOLASTIC AND EXTRACURRICULAR ACTIVITIES."[8]  *Id.* ¶ 13.  One of the provisions of this policy is a definition of "capacity," stating: "[t]he school does not have capacity to provide a charter school student the opportunity to participate in an extracurricular activity when all available slots or positions for the activity are taken by regularly-enrolled students."  *Id.* ¶ 14; *JJIAAB Policy* at 2.

On September 2, 2015, the Acting Commissioner of the Department of Education (DOE) sent a formal letter to Brad Smith, Superintendent of MSAD 75, regarding the DOE's position on MSAD 75's JJIAAB Policy.  *Id.* ¶ 21; *Compl.* Attach. 2 *Letter to Superintendent Smith* (ECF No. 1) (*DOE Letter*).  Acting Commissioner Desjardins informed MSAD 75 that the DOE's interpretation of "capacity" is "that all

---

[8]    MSAD 75 explains that the adoption of the JJIAAB Policy was initiated in the spring of 2015 when MSAD 75 Superintendent Brad Smith learned that two HCA students were participating on MSAD 75 extracurricular activities outside the requirements of law codified by 20-A M.R.S. § 2415 (2). *Def.'s Obj.* at 6-7; *Def.'s Obj.* Attach. 1 *Affidavit of Bradley V. Smith* ¶ 18 (ECF No. 4) (*Smith Aff.*). Specifically, the students' parents did not apply to participate in MSAD 75's school teams, the students' parents did not receive Superintendent Smith's approval for their child to participate on school teams, and HCA did not pay a reasonable share of MSAD 75's costs for the children's participation on school teams.  *Def.'s Obj.* at 6-7; *Smith Aff.* ¶ 18.  Nevertheless, while the MSAD 75 Board of Directors set to work drafting a comprehensive policy to address the situation, it also authorized Superintendent Smith, as an interim measure, to increase the size of the teams to allow the two HCA students to participate, provided, however, that additional volunteers were found to support the increased team size for the duration of the season.  *Def.'s Obj.* at 7; *Smith Aff.* ¶ 20.

public charter school students who wish to take part in these activities should have an equal opportunity to do so.  For example, in the case of a baseball player, the decision as to whether the student is chosen for the team should be based solely on their ability to play baseball in comparison to others trying out." *Compl.* ¶ 22; *DOE Letter* at 1.  Acting Commissioner Desjardins also informed MSAD 75 at that time that their policy "would deny [charter school students] the right to participate in extracurricular activities that have been funded through the school district.  This is true despite the fact that their family has helped fund that school district by contributing a share of local and state taxes equal to that of other families in the district." *Compl.* ¶ 23; *DOE Letter* at 2.  The letter concluded that "to not allow this [charter school] student a fair and equal opportunity to participate in these activities would be discriminatory toward that student based on their choice of public school." *Compl.* ¶ 24; *DOE Letter* at 2.

### 3.  Enforcement of MSAD 75 Charter School Student Policy against John Doe

John Doe was a student of MSAD 75 until he and his parents made the choice for him to attend HCA when it opened in 2012.  *Compl.* ¶ 27.  Because playing basketball is important to Doe, he and his parents investigated the law regarding charter school students' opportunities to play sports in their home district, before Doe chose to attend HCA.  *Id.* ¶ 28.  HCA does not have a basketball team Doe could play on.  *Id.* ¶ 31.  However, its students have previously participated in school sports, and have specifically participated in school sports operated by MSAD 75, including Mt. Ararat Middle School.  *Prelim. Inj.* at 2 (citing *Prelim. Inj.* Attach 2 *D'Anieri Affidavit*

6

¶¶ 3-6 (ECF No. 5) (*D'Anieri Aff.*)).  During the last school year, 2014-2015, before MSAD 75's JJIAAB Policy was adopted, John Doe was in seventh grade at HCA and tried out for the Mt. Ararat seventh grade boys' basketball team at MSAD 75.  *Compl.* ¶ 29.  Doe survived two rounds of cuts and made the Mt. Ararat seventh grade boys' basketball team.  *Id.* ¶ 30.

This winter, sixteen boys studying at Mt. Ararat have signed up to try-out for thirteen available spots on the eighth grade team.  *Def.'s Obj.* at 8; *Smith Aff.* ¶ 12. The Withers gave notice to Mt. Ararat that their son wanted to try-out for the team. *Def.'s Obj.* at 8; *Smith Aff.* ¶ 11.  Pursuant to the JJIAAB Policy, after learning of the number of MSAD 75 and home school students who had signed-up for the eighth grade boys' basketball team try-outs, Superintendent Smith, after first speaking to Ms. Withers on November 6, 2015, sent a confirming letter notifying the Withers that Mt. Ararat Middle School did not have sufficient capacity to accommodate students from other schools.  *Def.'s Obj.* at 8; *Smith Aff.* ¶¶ 12-14.  The Plaintiffs assert that on information and belief, Doe competed against most, if not all, of the same boys last year, and he was awarded a spot on the team.  *Compl.* ¶ 37.  The Plaintiffs also contend that, after another year of experience with this team, it is more than likely that Doe would again be selected for the team, if he were given the same opportunities as other students who live in his district.  *Prelim. Inj.* at 2 (citing *Prelim. Inj.* Attach 1 *Withers Affidavit* ¶¶ 3-6 (ECF No. 5) (*Withers Aff.*)).

Mt. Ararat eighth grade boys' basketball try-outs took place on Monday, November 9, 2015 and Tuesday, November 10, 2015, and the coach of the team has

determined his selections for the thirteen positions on the team. *Def.'s Obj.* at 9; *Smith Aff.* ¶ 26.  However, pursuant to the Court's direction, MSAD 75 has delayed the announcement of the composition of the Mt. Ararat eighth grade boys' basketball team until 1 p.m. on Monday, November 16, 2015.  *Letter from Att'y David W. Bertoni to Hon. John A. Woodcock, Jr.* (Nov. 13, 2015) (ECF No. 19).

## II.   DISCUSSION

### A.   Jurisdiction: General Principles

Article III of the United States Constitution provides that the judicial power of the federal courts "shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."  U.S. CONST. art. III, § 2.  Here, the Plaintiffs present two theories under which they claim relief: Count One alleges a violation of 42 U.S.C. § 1983 and Count Two alleges a violation of 20-A M.R.S. § 2415.  As § 1983 is a federal statute, it provides an independent basis for federal jurisdiction; as section 2415 is a state statute, it does not provide an independent basis for federal jurisdiction. Nevertheless, if this Court has jurisdiction over the § 1983 claim pursuant to § 1983's jurisdictional counterpart, 28 U.S.C. § 1343, it may retain jurisdiction over the state law claim under the concept of pendent jurisdiction.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (To provide a basis for jurisdiction over the state law claim, the federal and state law claims must "derive from a common nucleus of operative fact").[9]  At the same time, if the § 1983 claim is not viable, particularly at

---

[9]     After *Gibbs*, Congress enacted 28 U.S.C. § 1367.  The United States Supreme Court has written that the "supplemental jurisdiction statute codifies" the *Gibbs* principles.  *City of Chicago v. Int'l Coll.*

this early stage, the Court would be left with a claim purely of state law and the Supreme Court has written that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."[10]  *Id.* at 726.  The Court therefore turns to whether § 1983 provides an independent basis for the exercise of federal jurisdiction.

### B.    42 U.S.C. § 1983

Each claim under § 1983 must have two elements: (1) the plaintiffs must show that the have been deprived of a right "secured by the Constitution and laws" of the United States, and (2) they must show that the defendants deprived them of this right acting "under color of any statute" of a state.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Young v. Brown Univ.*, 63 F. Supp. 3d 198, 204 (R.I.D. 2014).  Here the question narrows to whether the Plaintiffs have properly alleged that they have been deprived of a right secured by the Constitution and laws of the United States. Mere citation of 42 U.S.C. § 1983 is not enough, because § 1983 creates a remedy, not a right.   13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3573.2 (2008 ed.) ("Section 1983 is not a source of substantive rights; it provides only a remedy").  "Asserting a violation of federal law, however, will not always be enough to establish a § 1983 cause of action – '[the] plaintiff must assert the violation of a federal <u>right</u>."  *Consejo*

---

*of Surgeons*, 522 U.S. 156, 173 (1997).  To the extent the statute differs from the *Gibbs* principles, the provisions of § 1367 do not affect the Court's analysis in this case.  *See Berrios-Cintron v. Cordero*, 976 F. Supp. 110, 111 n.2 (D.P.R. 1997).

[10]    Depending on the circumstances, dismissal of the state law claim is not "a mandatory rule to be applied inflexibly in all cases."  *Redondo Constr. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Instead, the federal court should consider issues of "comity, judicial economy, convenience, and fairness."  *Id.*

*De Salud de la Comunidad de la Playa De Ponce, Inc. v. González-Feliciano*, 695 F.3d 83, 102 (1st Cir. 2012) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)) (emphasis in original).

### C.     The Asserted Federal Right

In general, there are two categories of rights enforceable under § 1983: federal statutory rights and federal constitutional rights.  The Plaintiffs here make no claim that their § 1983 action is grounded upon a federal substantive statute; accordingly the Court turns to whether the Plaintiffs have made a constitutional claim cognizable under § 1983.  The rights enforceable under § 1983 emanate through the Fourteenth Amendment and they include substantive and procedural due process, the equal protection of the laws, and those rights in the Bill of Rights incorporated by the Due Process Clause, including rights protected by the First, Second, Fourth, and Eight Amendments.

Here, the Plaintiffs narrowed their federal constitutional claim to an asserted denial of equal protection to charter school students.  *Pls.' Suppl. Mem.* at 1.  The Plaintiffs concede that the participation in extracurricular activities is not a constitutionally-secured right, but they maintain that the charter school students "are entitled to equal protection under the Constitution, which is a fundamental right independent of the right to participate in interscholastic and extracurricular activities."  *Id.*  They claim that MSAD 75's policy of distinguishing between its own students and charter school students is without a rational basis and therefore violates the Equal Protection Clause.  *Id.* at 2-3.

To support their claim that MSAD 75 is denying charter school students equal protection of the law, the Plaintiffs cite two federal cases: *Denis J. O'Connell High Sch. v. Virginia High Sch. League*, 581 F.2d 81 (4th Cir. 1978) and *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581 (W.D. Pa. 2009). In *Denis J. O'Connell*, the Fourth Circuit addressed a claim by a parochial high school that a state-sponsored athletic league violated its right to equal protection by excluding private schools from the league, a classification that the parochial high school maintained arbitrary classification in violation of the Equal Protection Clause. *Denis J. O'Connell*, 581 F.2d at 83. The Fourth Circuit considerably winnowed the constitutional claim. It noted that "education is not a fundamental right under the Constitution," *id.* at 84 (citing *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)), and neither is "participation in interscholastic athletics." *Id.* (citing *Mitchell v. Louisiana High Sch. Athletic Ass'n*, 430 F.2d 1155, 1159 n.17 (5th Cir. 1970)). However, the Fourth Circuit wrote that the claim that the "right of private school students to be treated similarly as public school students" must survive a "rational basis" test, *id.*, and a "claimed denial of equal protection by state action arises under the Constitution and would normally be within the District Court's jurisdiction [under § 1983], unless unsubstantial or frivolous." *Id.*

In *Trefelner*, a district court in Pennsylvania dealt with a claim by a parochial school student that a local school district violated the student's First Amendment right to free exercise of religion and equal protection of the law by promulgating and enforcing a policy that limited participation in extracurricular activities, here a

11

marching band, to students of the school district. 655 F. Supp. 2d at 585-90. In *Trefelner*, the district court issued a temporary restraining order requiring the school district to allow the student to participate in the marching band. *Id.* at 598.

Against *Denis J. O'Connell* and *Trefelner*, MSAD 75 cites *Pelletier v. Maine Principals' Ass'n*, 261 F. Supp. 2d 10 (D. Me. 2003) for the proposition that equal access to sports teams is not a fundamental right under federal law. *Def.'s Suppl. Opp'n* at 3. In *Pelletier*, parents who were home schooling their children wanted their children to compete in track, not for the local school, which was willing to allow them to participate, but for a local Christian school, which was not. *Id.* at 11-13. The *Pelletier* plaintiffs agreed that there is no fundamental right to athletic participation. *Id.* at 13-14. The district court for the District of Maine concluded under a substantive due process and parental educational choice analysis that the Maine Legislature's distinction between requiring a public school to accept home schooled students in its extracurricular activities and not requiring a private school to do so had a rational basis. *Id.* at 13-15. The Pelletiers did not raise an equal protection argument. *Id.* at 15.

## D.   Analysis

The narrow issue here is whether the Plaintiffs have raised an equal protection argument that is serious enough to allow this Court to exercise jurisdiction over the case. Neither *Trefelner* nor *Pelletier* is particularly helpful. The plaintiffs in *Trefelner* argued that the school district's policy violated both their equal protection and free exercise of religion rights and the district court analyzed the case under the Free

Exercise Clause of the First Amendment because it was the "strongest guarantee of the rights at issue in this case." *Trefelner*, 655 F. Supp. 2d at 590.  The *Trefelner* Court subjected the school district's policy to "heightened scrutiny" and concluded that the policy was not "narrowly tailored to advance a compelling interest."  *Id.* at 596.  The *Trefelner* case is of limited applicability to this case as there is no free exercise of religion claim here.

Nor is *Pelletier* determinative.  The *Pelletier* Court did not address an equal protection argument because none was raised.  It does set forth the general principles of law that the Fourth Circuit discussed in *Denis J. O'Connell*, but the Plaintiffs in this case are not claiming that charter school students have a fundamental right to athletic participation.

The Court returns to *Denis J. O'Connell*.  In *Denis J. O'Connell*, the Fourth Circuit held the state-sponsored league's exclusion of non-public schools to the lowest equal protection standard of rational basis and concluded that the league's exclusion passed the rational basis test.  581 F.2d at 88.  The Fourth Circuit's decision does not support the Plaintiffs' likelihood of ultimate success; however, for purposes of district court jurisdiction, the Fourth Circuit concluded that the district court "properly took jurisdiction of the claim pursuant to 28 U.S.C. § 1343."  *Id.* at 84.  Even the dissent in *Denis J. O'Connell* agreed that the "district court properly took jurisdiction in this case."  *Id.* at 88.

Consistent with *Denis J. O'Connell*, this Court concludes that it could exercise jurisdiction over the equal protection count in this case.

### E.   *Pullman* Abstention

Although not briefed by the parties in the extraordinarily short interval for decision in this case, the Court resolves the jurisdictional question on another basis: *Pullman* abstention.  Professor Chemerinsky defined *Pullman* abstention:

> Federal court abstention is required when state law is uncertain and a state court's clarification of state law might make a federal court's constitutional ruling unnecessary.

ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 12.2 (5th ed. 2007).  "Under *Pullman*, federal courts should abstain when '(1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." *Casiano-Montañez v. State Ins. Fund Corp.*, 707 F.3d 124, 128-129 (1st Cir. 2013) (quoting *Batterman v. Leahy*, 544 F.3d 370, 373 (1st Cir. 2008)).

Here, the parties have presented differing interpretations of the meaning of the term "capacity" as it appears in 20-A M.R.S. § 2415(2).  The statute reads in part:

> A public charter school is eligible for statewide interscholastic leagues, competitions, awards, scholarships and recognition programs for students, educators, administrators and schools to the same extent as are noncharter public schools. If a public charter school applies for and receives written approval from the superintendent of a school administrative unit or the superintendent's designee, who may withhold such approval, the public charter school is eligible for school administrative unit-sponsored interscholastic leagues, competitions, awards, scholarships and recognition programs for students, educators, administrators and schools to the same extent as are noncharter public schools. If a public charter school student applies for and receives written approval from the superintendent of the school administrative unit of the noncharter public school or the superintendent's designee, who may withhold such approval, the public charter school student is eligible to participate in extracurricular activities not offered by the student's public charter school at the noncharter public school within

> the attendance boundaries of which the student's custodial parent or legal guardian resides or the noncharter public school from which the student withdrew for the purpose of attending a public charter school. <u>The superintendent of the school administrative unit</u> or the superintendent's designee <u>may withhold approval</u> only if the public charter school the student attends provides the same extracurricular or interscholastic activity or <u>if the noncharter public school does not have the *capacity* to provide the public charter school student with the opportunity to participate in the extracurricular or interscholastic activity</u>.

20-A M.R.S. § 2415(2) (emphasis supplied).   The Plaintiffs argue that the term "capacity" means what Thomas A. Desjardin, the Acting Commissioner for the state of Maine Department of Education, says it means:

> The department's interpretation of capacity is that all public charter school students who wish to take part in these [extracurricular] activities should have an equal opportunity to do so.

*DOE Letter* at 1.   The Defendant argues that "capacity" means what the MSAD 75 policy says it means:

> The school does not have capacity to provide a charter school student the opportunity to participate in an extracurricular activity when all available slots or positions are taken by regularly-enrolled students.

*JJIAAB Policy* at 2.

The Maine Legislature amended section 2415(2) on May 1, 2014 over the Governor's veto to include the "capacity" language under the title "An Act to Permit a School Administrative Unit Discretion Concerning Participation of Students from Charter Schools in School Extracurricular and Interscholastic Activities."  P.L., 2013, ch. 601, § 1 (enacted May 1, 2014).  The meaning of "capacity" as used in this statute has not been the subject of any state court decisions.

This Court views the proper interpretation of "capacity" as potentially determinative of the issues in this case, including the equal protection contention. If the Plaintiffs are correct, they will prevail in their state law claim; if the Defendant is correct, it will prevail. If the Plaintiffs prevail, there is no equal protection issue because the public school and charter school students will be treated similarly. If the Defendant prevails, the rationale for the distinction between public school and charter school students will be explicated by the state courts and may assist the equal protection analysis. Thus, as the Supreme Court has written, abstention is proper if the state statute is "susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Bellotti v. Baird*, 428 U.S. 132, 146-47 (1976) (*quoting Harrison v. NAACP*, 360 U.S. 167, 177 (1959)).

This case, as framed, is a textbook example for *Pullman* abstention. A federal court is less likely to retain jurisdiction if the state law question involves a matter of state or local concern. *See Torres-Rivera v. Garcia-Padilla*, 783 F.3d 42 (1st Cir. 2015) (commonwealth political issues); *In re Eastport Assocs.*, 935 F.2d 1071 (9th Cir. 1991) (land use planning); *Almodovar v. Reiner*, 832 F.2d 1138 (9th Cir. 1987) (state anti-obscenity ordinance); *Brooks v. Walker Cty. Hosp.*, 688 F.2d 334 (5th Cir. 1982) (state health care law). Here, the resolution of this issue of statutory construction centers on public and charter school education, traditionally areas of state and local concern. *See Pustell v. Lynn Public Schools*, 18 F.3d 50, 54 (1st Cir. 1994) ("Although federal

courts are capable of resolving state law issues, educational policy is a matter of particularly local concern").

Also implicated in the Plaintiffs' lawsuit is a demand that the federal court enjoin state school officials from acting in accordance with school district policy. Such an injunction would raise significant questions about the breadth of federal court authority over state actors. At the very least, if this Court has the power to enjoin a school coach from selecting a middle school basketball team, it should be mindful of "[c]onsiderations of federalism, comity and sound judicial administration." *Casiano-Montañez*, 707 F.3d at 129.

The one *Pullman* abstention requirement that gives the Court pause is that the federal constitutional question must be "significant." *Batterman*, 544 F.3d at 373 ("The problem with *Pullman* abstention here is that the lawfulness of the cap does not present a significant federal constitutional issue"). Whether a challenge to this state statute on the ground that it has no rational basis raises a "significant" federal constitutional question is less clear. The Fourth Circuit's conclusion in *Denis J. O'Connell* may presage the ultimate resolution of this question, if the constitutional issue is finally reached. Nevertheless, the Court concludes that a challenge to the constitutionality of this statute based on a statutory distinction between public school and charter school students is sufficient for *Pullman* abstention purposes. *See Pustell*, 18 F.3d at 54 (*Pullman* abstention was appropriate when "[a] dispositive state court interpretation of [a state educational policy] issue could eliminate entirely the need to address the constitutional issues").

17

In drawing its conclusion, the Court has substantially relied on the First Circuit's 1994 decision in *Pustell v. Lynn Public Schools*.  In *Pustell*, the district court was confronted with a remarkably similar issue: a mixed question of state statutory interpretation and federal constitutional law involving a Lynn School Committee regulation that required consent to home visits by school district officials before granting approval to homeschooling.  *Pustell*, 18 F.3d at 51.  The district court reached the constitutional issue and the parents appealed.  *Id.*  On appeal, the First Circuit concluded that the district court erred in failing to abstain for substantially the same reasons this Court is abstaining in this case.  *Pustell*, 18 F.3d at 51-54.

The Court realizes that in making this ruling, the Plaintiffs may well elect to file a substantially similar case in state court and that, in the interim, the MSAD 75 coaching staff may announce the members of the Mt. Ararat eighth grade boys' basketball team and begin practice, and the team will not by virtue of the application of the contested policy include the student Plaintiff.  The Court does not diminish the outsized significance that team selections can have on a middle school student.  Nevertheless, the Court resolves that issues of the proper exercise of federal power must prevail.

On balance, this Court concludes that it should abstain from hearing this case, at least until the state of Maine courts have had an opportunity to decide the novel issue of statutory interpretation that may be dispositive of the claim.

### F.    Remedy

One alternative would be to certify the state law question to the Maine Supreme Judicial Court.  *See* 4 M.R.S. § 57.  But before certifying a question to the Maine Law Court, there must be "no dispute as to the material facts at issue." *Darney v. Dragon Prods. Co., LLC*, 2010 ME 39, ¶ 10, 994 A.2d 804.  Here, the Court is not at all certain that the parties agree enough on the underlying facts to meet this standard.

A second alternative would be to stay this proceeding while the state court resolves the state law issue.  In *Atwater v. Chester*, 730 F.3d 58 (1st Cir. 2013), the First Circuit concluded that a stay of the federal proceeding was appropriate where the district court had abstained under *Pullman*.  *Id.* at 64-65.  But in *Atwater*, there was a state court proceeding pending.  This Court will not stay this case pending a potential filing in state court.  Furthermore, it may well be that the Plaintiffs decide to proceed with both the state law count and the equal protection count in state court. If so, the state court may reach and resolve the federal constitutional question.

In these circumstances, the Court has resolved that the best alternative is to dismiss the pending action without prejudice to allow the parties to proceed in state court.

## III.    CONCLUSION

The Court DISMISSES the Plaintiffs' Complaint without prejudice (ECF No. 1).  The Court DISMISSES as moot the Plaintiffs' Motion for a Preliminary Injunction (ECF No. 5).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of November, 2015